more orders because spend mhm than them it is court castle uh... we're here basically the appeal of the motion for summary judgment that was granted to the on their from the defense of special this basically comes down to the all question when did holly no and when did she know as a matter of what you know when did the injury occur when the question is what is the injury the injury i would say occurred on march nineteenth two thousand and ten which he cashed the check from the proceeds of the sale of missouri property that check was twenty five thousand dollars late from what she expected from a settlement of the case orally in september two thousand eight when her divorce was uh... subtle but not the written order was never entered the written order income until april two thousand nine defendant a new attorney was not present at the settlement at the hearing became police attorney the order was drafted by the husband the ex-husband's attorney mister wang so this order was entered then sits there the uh... the parties go back to court three or four times on motions and post on other issues that work contained in that original or in april two thousand nine there was some discussion of of flooring materials or but they reaffirmed how they were going to sell the property a couple of different times then we get to uh... february twenty second two thousand and ten when uh... an offer had been made purchased the property settlement papers were prepared by the title company down in missouri those papers were transmitted to works for a title company who i also work with and that's indicated james attention at the title company and she looked at the numbers and said and told holly numbers and policy i'm not getting the money at i was supposed to get this is not going to get the extra fifty thousand it was agreed upon at the hearing at the end of the day did not go to a testimony to reach the settlement i'll give you an extra fifty grand and we'll worry about you keep the pension this and that that's how the divorce was decided on that day so february twenty second holly contacts the defendant something's wrong with my closing of my property can you help me with that the defendant says i don't do real estate call a real estate lawyer then i get involved and i look at it and uh... look at the order i get copies of the order of dissolution try to look through the file basically say we can't delay the closing of this house is not for sale in the market so long we risk an injury by not letting the sale go through so let's hold the proceeds of the sale while we figure out what's going on and we don't know if an injury would have occurred on february twenty fourth when the house sold or didn't sell they could have got a better offer six months later they could have got a lower offer there's no injury on the date the house was sold there could have been had this problem derailed the sale but that didn't happen that day on february twenty sixth on advice of counsel after research we realized there was a transcript of the uh... hearing in september of two thousand eight that transcript said holly's going to get an extra fifty thousand but the order said holly's going to get the first fifty thousand now to a high school secretary with no college education high school graduate she didn't understand any difference in on the math and how the order worked out in fact evidently an attorney mr wang didn't understand that and i don't know whether defendants in this case evaluated that or not or just neglected to even see if that language worked for them well it seems like they've agreed that your client comes out twenty five grand short yes i think there's no dispute that she came out at the end twenty five grand short when did this happen i believe by filing a motion on croton we don't assume that there is a an error there's an injury speculative damages the actual damages is the uh... the moment in time that i believe is what counts here and the motion on croton seemed appropriate and defendants even alleged in their uh... as a defense that my client failed to mitigate her damages by turning down a settlement offer on the day of the hearing for motion on croton in fact there had been potentially a settlement of the whole issue without even filing that motion but this was a very big divorce and the husband said no and he also there was a secondary issue of a rolex watch that was very valuable to both parties he the husband kept the rolex watch he refused to return the watch so we continued to have the hearing motion on croton at that hearing the judge message basically ruled counsel's been back to the court three times after the original order was entered in april two thousand nine you had every opportunity to review this order you affirmed it on more than one occasion so i'm not going to serve the trial court's decision for the entry of that order supposedly agreed order in april two thousand nine so at this point in time march sixteenth there's a set date a ruling from the court i know that okay was this do i repeal that ruling of judge message did he get it wrong or is his ruling correct and was there was her speculative injury was her potential injury then still caused by wrongfully caused by the defendants that's when the inquiry starts that's when i'm on notice that it's wrongfully caused judge message basically said in so many words holly's attorney should have figured this out before today and then on march nineteenth so in answer to my question your position is is at the earliest the injury occurred on the day he denied the motion to amend the record non-croton close i maintain that the good for me to get that well it's close the uh... the injury was confirmed that it was wrongfully caused on march sixteenth or at least an inquiry whether or not this rose to the level of legal malpractice versus just a mistake that was correctable you know it would waste judicial resources to parallel these cases and say oh prior to march sixteenth i should have filed this cases of legal malpractice case while i'm still hoping to correct the uh... order which i thought was correctable and a very appropriate way to do it is to assume hey this is just a scrivener's error we have it in writing we can rule on it we can change the order all the stuff in the middle didn't really matter we can fix this then there's no actual damage the proceeds were being held by the title company of missouri they were not dispersed at any time the parties could have agreed you're right i agreed to give you the fifty grand but you know so can i challenge the fact that the husband gave you know inappropriate testimony that probably wasn't true you know or did the judge make a ruling the judge didn't rule based on the testimony by the party the judge ruled based on the fact that the defendant had the opportunity to fix this and didn't so the actual injury that occurred on march nineteenth there's an affidavit in the record where she says this is when i received my checks i got the disbursement on twenty five thousand like on march nineteenth so the actual damages occurred on march nineteenth she was on notice on march sixteenth any time prior to that you don't have the two primary elements that you need was it wrongfully to ask was it wrongfully caused and did i have an actual damage prior to that date it's all speculative it could have been resolved and it's not just the amount of damages that were in question we knew it was probably going to be twenty five thousand and that's where judge mcreynolds i believe got it wrong what he stated in the docket entry which is attached to the supplemental attendance page four he said plaintiff was aware at least by february two thousand ten that she had a potential malpractice claim and was aware of exactly what the potential damage was he's saying the damages were speculative in his ruling which is which i believe is a misapplication of the law even if we agree on the facts so he correctly found that the malpractice claim and the damages were still potential on march in this case and the motion to reconsider his initial approval of the motion to summary judgment so i say it wasn't until march nineteenth two thousand and ten that she was under the obligation that this case was right that's the first day she could have filed a case of legal malpractice or you could argue that she could have appealed the decision of judge judge message and since there was a split ruling the defendants could have appealed the decision not the defendants but the husband could have appealed the decision to not get the Rolex watch so either party had an opportunity to appeal judge message's decision so so before he ruled in the motion it was a speculative injury and there are several cases cited in the briefs on both sides that including butler vs. mayor brownclad a plaintiff is injured at the time an adverse judgment is entered even if the amount of damages is uncertain or the judgment might later be reversed so you can argue that appealing that wouldn't have told the claim any longer so it could have been filed if you assume that judge message made the correct decision you could have filed appeal or not have filed appeal and filed a malpractice that next day if you filed it before then it doesn't matter whether he was right or wrong it's a matter of when he entered the judgment I believe when he entered the judgment on March 16th that's the first time that the light bulb goes off to say here's a set date and time that we know this is possibly wrongfully caused to the extent that it's legal malpractice that it's going to cause the injury that can't be reversed that occurred on March 19th as soon as the money got put into the husband's pocket it's gone, you're not getting it back so if he had ruled in favor of Polly Schneider on that motion non pro ton she would not have been injured to $25,000 the court does in Warnock v. Karm, Wynand & Patterson they do succinctly state what I'm trying to say that in Illinois a cause of action for legal malpractice will rarely approve prior to the entry of an adverse judgment settlement or dismissal of the underlying action in which the plaintiff has become entangled due to the purportedly negligent advice of his attorney it further states the existence of actual damage is essential to a viable cause of action for legal malpractice the actual damage didn't happen until March 19th, 2010 there's a case also, Lucy which I cited in my brief and also another one York Woods Community Association v. O'Brien no relation, I assume that the claim of cause of action does not approve simply because the plaintiff incurred some attorney's fees that's also a claim that defense has made well, Polly had to go to retain a service as another attorney to clean up the problem with her divorce well, they cite Gorin and Gorin has a very limited holding to the facts of that case that case basically held that it was an appellate case and the court said your lawyer messed up this brief, we can't accept this brief we can't accept this appeal so they were told that their lawyer did it wrong and it risked them losing their appeal and they hired another lawyer to basically redo all the work and do all the appellate work so when they incurred $1,300 in attorney's fees that would be recoverable that was also directly a result of the negligence of the first attorney and they were told by the court it was their negligence that caused that extra work to be done so when no finding has been made the cause of action doesn't accrue merely because attorney's fees are incurred it may, but that is not this case she incurred attorney's fees to help her sort out whether she should agree to close this house or not and real estate attorneys charge too much to agree to sign the bottom of a settlement paper every once in a while you can provide significant value for the money that you charge to do that and this would be one of those cases so you agree, I'll handle the closing for you or I'll handle the issues revolving around that and that's a fee that was for that purpose only after March 16th when the motion on Kvotunk was denied which she then incurred fees related to this case and of course those fees would not be recoverable in a legal malpractice action In conclusion, I would basically like to say that there was not an adverse ruling of the court until March 16th, 2010 that put Holly on notice that her injury which hadn't yet become actual damages was wrongfully caused by the defendants and even if you were to find that she incurred some attorney's fees after February 22nd and prior to March 16th if you determined those were actual damages she didn't know until March 16th that it was wrongfully caused or didn't have the need to inquire as closely as to whether it was wrongfully caused by the malpractice and negligence of the defendants So if I had filed this case prior to March 19th this case would not have been right and the defendants would have said you prematurely filed this action and what we don't want is everybody running to court because there was a mistake made by an attorney saying, oh you committed malpractice we would have more cases in malpractice than the cases that we're trying normally if we ran to every time the order didn't match what was talked about in court as the first response to that case so I don't think we want to set the precedent or upset the precedent that's already been set that encourages more claims in legal malpractice to be filed but in this case it was appropriate only after the actual injury of the $25,000 which was directly caused by the failure of the defendants to properly review the dissolution of marriage order that was entered in this case Any more questions? Was this a contested dissolution hearing? It started as a contested hearing as many do and then during the hearing the parties said okay I'll give you $50,000 and then we settle our property issues And you weren't representing anybody at that point in time? Attorney Scovel represented Holly Schneider Attorney Wang represented the husband Attorney Wang still represented the husband during the motion on Pro Tonkin throughout the proceedings Attorney Winstein became the attorney of record around March or April of 2009 and he's the one that received the communication regarding Henry and the order that Michael Wang drafted So when it settled in front of Judge Mearsman Judge Mearsman was the trial judge You said Message, Mearsman, and McReynolds and so I'm a little confused Mearsman approved the settlement Mearsman, he was sitting judge at the time of the contested divorce hearing And it settled the agreement as is the standard in Rock Island County on the record Yes And you had a transcript of that And the transcript was attached to the parties to draft the order And then the parties prepared the order the dissolution order and the property settlement agreement Yes, Attorney Wang prepared that agreement And did everybody sign off on it? The only signatures on the agreement are Michael Wang, Arthur Winstein, and the judge So both attorneys approved the language of the agreement? Both attorneys signed the agreement that was entered in April 2009 And the judge signed it? And the judge signed it, Judge Mearsman But since Judge Mearsman was no longer able to handle this case it was assigned to Judge Message on the post-trial matters of the motion on Protonc McReynolds McReynolds is handling this case Message handled the end of the divorce case where we tried to fix the order with the motion on Protonc to say, hey, it's just a scrivener's error If we fix the order and we send it to the title company in Missouri they'll disburse the money correctly Then there's no injury No actual damages Thank you Thank you Mr. Park May it please the court, counsel My name's Bob Park I represent the defendants in this case Arthur Winstein and the law firm he was with at the time of the occurrence Winstein, Kavinsky & Cunningham, LLC Our brief and the ruling below is based on the statute of limitations for legal malpractice found in the Code of Civil Procedures Section 13-214B which says that a legal malpractice case regardless of the basis for that claim must be brought within two years from the time the person bringing the action knew or reasonably should have known of the injury for which the damages are sought Our question is, what is the injury? When did Plaintiff know of her injury? And when did she know it was wrongfully caused? Now, the cases say that knowing of an injury doesn't necessarily mean that the person knows of malpractice The statute of limitations begins when the injured party knows of facts that show that She should be on inquiry She should inquire further as to whether there's a possible cause of action And when did that happen in this case? And I think the facts are clear She doesn't have to actually have noticed that there was malpractice only that there's a problem that might have been caused by malpractice But she does have to have an injury And when did that occur? That occurred The injury actually occurred on April 29, 2009 when the judgment was entered And if I could just briefly review the facts from the beginning and then I'll get into the entry of the judgment The complaint in this case says that Attorney Winstein erred in allowing the entry of the judgment for dissolution of marriage that did not conform to the in-court settlement made a few months earlier Now, just to go back on these facts and review this On September 19, 2008 the parties, Holley and Douglas-Snyder appeared with their attorneys Mr. Wang and Attorney Scoville And they were before Judge Mearsman And they recited Attorney Scoville recited that the division of the Missouri property was going to sell the property split the money and then Holley would get an extra $50,000 Then that was put on the record and put in the transcript In April of 2009 finally a judgment got prepared And at that time the judgment was actually prepared by Attorney Wang But by that time Attorney Winstein was representing Holley-Snyder And actually I believe the parties appeared in court on April 29 before Judge Mearsman again And Judge Mearsman signed this dissolution of marriage And the dissolution of marriage said the property sold Holley gets the first $50,000 and then the balance is split And as counsel said that's a $25,000 difference In February of 2010 when they finally got a buyer for the Missouri property Holley got this closing statement And she conferred with her friend Janice Peterson at the title company And she, at that time goes to Attorney Winstein and calls him up and says this is on the record in her deposition She says we've got to stop this closing there's a problem And he said you need to get a real estate attorney She then went to Mr. Benson to represent her And what did he do? He filed this motion for non-proton And the motion for order non-proton that was filed February 26, 2010 says that there was an error in the judgment and pointed out the difference between the transcript from the September 2008 hearing and the judgment in April 2010 or 2009, I'm sorry So by that time she knew there was an error in the judgment she knew what the error was and she blamed Attorney Winstein In fact, in her deposition she testified that in February when she went to see Mr. Benson she knew that there was a discrepancy between the in-court settlement and what was in the judgment and she considered that discrepancy to be quote, an error Mr. Winstein had made unquote So by that time she knew that there was there was a problem, there was an injury and she knew Wait a minute, what injury did she receive? There's a judgment She knew that there was a judgment that didn't confine her and if you look at it you can see where this could have been an honest mistake I mean just the language that ended up costing her the first $50,000, first to sell it for $50,000 don't know whether it was done intentionally or just sloppily and that's what happened but this ended up costing her $25,000 but it didn't cost her she didn't cost $25,000 until the house sold it Judge, the die was cast once the judgment was entered and that's why we've cited cases that say that the cases say that if an attorney makes an error that results in an entry of a judgment unfavorable to the client, the statute begins to run when the judgment is entered Now in this case, we admit Holly didn't know about the discrepancy until sometime later, but the injury was actually when the judgment was entered and that judgment was the final judgment within 30 days after April 29, 2009 when it was entered that was the final word on how that money was going to get split when that property was sold and in the cases that we've cited, Butler the court said a plaintiff is injured at the time an adverse judgment is entered even if the amount of damages is uncertain or the judgment might later be reversed and that's what happened here that she was injured by according to what she's alleging in this case, she was injured when that judgment was entered because of attorney Winstein not checking to make sure the judgment corresponded with the in-court statement that had been made in September of 2008 and the same type of language is found in Belden v. Emmerman plaintiff's argument that the element of damages was not present until we affirmed the trial court's order is unpersuasive again in Belden they held that the entry of the judgment that was unfavorable to the client, that's the key event that is the injury and the same was true in Zupan v. Berman and in that case that was a dram shop case and the attorney in question had represented the defendant and a judgment was entered on the dram shop case and then there were post-trial motions that were filed and the post-trial motions were denied and then there was an appeal taken and the appeal was denied and then a legal malpractice suit was filed and the plaintiff in the legal malpractice suit had tried to say that they were filing within the statute of limitations, they said well we filed within, it was five years at that time, we filed within five years of the date of the denial of the post-trial motions and well within five years of the date of the affirmance on appeal and the court said no that the key date is the date on which the judgment, the adverse judgment was entered against your client in the dram shop case, it's not when the post-trial motion was denied, it's not when the appeal was denied. So the same thing would apply here, the injury was when the court entered a judgment that said this is how this money is going to be divided and what the Belden court did she have any damages then, did she have any damages I mean that presumes that the house sells and that there is an excess of $50,000 in proceeds which all of that is speculation in the judgment center. It's not speculation as to how any money from that house is going to be divided. That's set by the court and that's a final order and it can't be changed. Well but if the house sells then the proceeds are $20,000. Well I guess that would be a different situation. She knew that the house sold and she knew what the proceeds were going to be in February of 2010 at the time she got the closing statement. She knew exactly what the situation was at that time. Admittedly she never put two and two together. She had a copy of the transcript and she had a copy of the judgment but she never compared the two until after she got the closing statement once the house had sold and they were about to close and finalize that transaction. That's when she realized and that's when the statute started to run. At that point... Now that it's starting in February 22, 2010 or... Well we're under the discovery rule so even though the injury occurred in April of 2009 when the judgment was entered, she didn't know about that. She had no reason to check on that until a later date. And she found out about that when she got this preliminary closing statement from the people in Missouri saying here's how we're going to divide money. At that time, you're saying because of the closing statement that she knew then that her injury was wrongfully caused. Correct. Right. There was no reason to think perhaps this was just a scrivener's error and that there was no wrongful cause of it and it was something that could be added to her deposition that when she realized there was a difference between the decree and what was said in court a few months before that she thought that that was an error that Mr. Winstein had made. That was her testimony and that's what we based our motion on. Right, but an error doesn't necessarily have to be something that's wrongfully caused. That's the whole idea of the scrivener's error that it was just drafted such that the title company would not release the funds per which her understanding of the judgment was. Right, but that's why in a legal malpractice case all that's needed is inquiry knowledge. In other words, sufficient facts to put somebody on inquiry as to whether there's been an actionable error made. That's what she had in February of 2006. In fact, she then hired Mr. Benson and we have argued and continue to argue that once she had to hire an attorney to try to straighten this out, she had actual provable damages at that time. But even your own client said you need a real estate attorney. So he was saying, not with respect to the divorce case, but you need a real estate attorney to deal with the closing. Is that the same as hiring a lawyer to deal with alleged malpractice? No, not at all. A real estate attorney would normally handle the closing, probably prepare a deed or something like that. In real estate transactions, at least in my experience, in real estate transactions, it's not normal for the lawyer to try to file a motion for order non-proton getting into the divorce case and trying to change the judgment that had been entered the better part of a year before, back in April of 2009. That's not the normal services of a real estate attorney, of filing motions in a divorce case to try to change a long ago entered judgment. Is it possible Mr. Winstein was just kind of passing the buck at that point in time and wanted to deal with it? I'm not really sure why he didn't want to get involved, but he didn't. The facts are he didn't get involved at that time, but the question is, what did Holly Schneider know and when did she know it? When she went to him... It's a different question, what did Mr. Benson know and when did he know it, because the problem here is the complaint was just a few days too late. And if he had filed the complaint a little bit sooner, we wouldn't be in this position. Wasn't that always true in a statute of limitations defense? That was also true in the Belden case. They filed in November. Had they filed about two months earlier, they would have been in time. But the ruling that he sought, the ruling was March 16th of 2010 and the complaint was filed March 15th of 2012. Two years later. Am I right? Correct. So, even if he had filed a malpractice action a year later, it would have been timely. Absolutely. Had he filed a year after that, he would have been well within the statute. He waited until the last possible date under his theory of accrual to file the action. So the issue is, which attorney made the mistake? Well, the issue is, when did the person bringing the action know or reasonably should know of the injury? And that was in February. She went to Mr. Benson and the transcript will show in her deposition, and this is what Judge McReynolds relied on, that she had asked Mr. Benson to try to file a motion to try to get this judgment changed so that it didn't say what it said. So she knew there was a problem. She blamed that problem on Mr. Winstein, and she hired another attorney to try to fix it. Okay. In one of the cases that we cited, and I want to check and make sure it's the right one, in the Belden case, they were arguing that the statute didn't start to run until the judgment that they were concerned about was affirmed on appeal. And the appellate court said, yes, but once you took the appeal, you already were incurring attorney's fees to try to get that changed, and you knew there was a problem, and you were incurring attorney's fees to try to fix the problem, so your damages started when you hired an attorney to try to fix the problem. And that's exactly what we're saying here. Once she hired an attorney to try to fix what she knew was a problem, what she said she considered to be an error Mr. Winstein made, she had actual, actionable damages and should have filed the suit not that day, but within two years of when she knew that there was a problem that she blamed on Mr. Winstein that had caused the entry of the judgment adverse to her. You know, I'm not sure this makes any difference to our analysis, but you think of Mr. Winstein, who had actually represented her along the way, had actually gone in himself with the non-proton motions as I was there, that it would have made a difference on the trial court's ruling on the motion? I guess we could just speculate, but I guess I just don't understand the behavior of Mr. Winstein in this case. I'm not very admirable. What? I understand what you're saying, that maybe he should have stepped in and tried to get this straightened out back in February when she came to him with the problem. That might have been good for him to do that. But that's not the error. The error was that he didn't properly, I mean, what's alleged here is that he didn't properly compare the judgment order before it was entered with the transcript of the settlement that had been made in court, and the injury was when a judgment was entered against Holly Schneider's interest in April of 2009, which she found out about in February of 2010. Thank you. Thank you, Mr. Clark. Mr. Benson, some rebuttal? Mr. Benson, why wasn't the date of discovery the date you filed that motion on February 26th? She goes to an attorney, she gets advised, you say, hmm, we've got to fix this. I think that Mr. Weinstein is a highly regarded divorce attorney who obviously took a long time for my client to decide to take action to recover her damages. I believe that as an attorney, as a fellow attorney, I believe it was my obligation to say, you know what, this isn't malpractice. This isn't simple error that can be corrected. And I actually sought off-the-record advice from a local judge regarding this case. And a local judge advised me a motion on Quotat would be appropriate. Don't interrupt me. Let's focus on the date that I'm concerned about, and that is the date you filed your motion asking that the order be corrected. I mean, that's the lightbulb moment. There's a mistake here. And that's February 26th, 2010. I filed that motion as early as quickly as I could put that motion together. Four days after she contacted you. So then why did you wait two years after the ruling? Why didn't you just wait two years after you filed the motion? After you took an action to solve the problem? I might agree with your prior statement. Whose malpractice is this? If I had told her the approval date for this action was when I believe she incurred actual damages, and when she knew, was under an obligation to inquire whether it was wrongfully caused, was March 19th, 2010, and I didn't file it, and the correct response is, no, it was February 26th, instead of filing a motion en quotant, that doesn't matter. I don't believe that that doesn't matter. I believe that does matter that I tried to resolve this as a scrivener's error, as an honest mistake. I don't believe Mr. Wang tried to put one over on anybody here. I believe he just doesn't have an MBA like some attorneys have, and thought that that meant the same thing. And until a real estate person who does closings looks at it and says, no, this is how the math works out at the bottom. You know, unfortunately, we deal with a lot of math that many attorneys aren't very good at adding and subtracting. So we rely upon the closing agents to tell us the settlement statement is correct. The services, as you talked about, the services of a real estate attorney are far beyond evaluating whether the settlement statement is correct. It's, did you do the right inspections? Did you have a way out of the contract? Are you going to get the money to resolve all the issues? And he said this was the final judgment in April of 2009. It wasn't because Mr. Winstein went back to court three or four or five times on motions to supplement the order. All the issues weren't resolved in April of 2009. I'm not focusing on the 2019. I'm focusing on what happened in February of 2010. What I'm saying also is, he said there was an adverse judgment in April of 2009. So the point of that being is, there was no adverse judgment regarding Holly's contention that she didn't get the money she was supposed to get. That happened on March 16, 2010 when the motion was denied. And I agree. Maybe if Mr. Winstein had brought that motion saying, I've made some mistakes here, let's fix it, the judge may have ruled differently on that motion. Did the judge have a transcript of what was recited in open court? Yes. When he heard the motion? Yes. And then he made a fine in effect that there's no mistake here. The error was repeated twice. The purported error was repeated twice. The paragraph regarding the sale of property was never an issue that was reviewed specifically. There was other issues that, let's redo this order, and it was still included, but it was never discussed, it was never argued in any of those other post-trial motions. So the first time anybody became aware that that language wasn't going to work was when the closing statement came down. I did want to quote, if I could, from the Lucy versus Pretzel and Stouffer, I love the name of that case, Pretzel and Stouffer. I almost want to go to work for that firm. But they say, you know, the relationship between an attorney and client is one where the attorney is charged with the duty to act skillfully and diligently. Given that duty, it's presumed the client is unable to discern any misapplication of legal expertise. You can't hire an attorney to always watch what the first attorney's doing to say, hey, you did something wrong, which is what would have had to have happened in this case. Okay. Therefore, what they're saying is, since you can't ascertain the malpractice at the moment of incidence, you must wait until you have a realized injury. The realized injury is the actual damages that didn't happen until she received the check from the proceeds of the sale. There was a way out of this. There was a way to say, this isn't malpractice. This is just a mistake. It's easily correctable. We have a written record of the transcript of the oral settlement, and then we have an order. If you have two writings and they don't match, that's what's appropriate for a motion non pro tonic. If I hadn't filed a motion non pro tonic, the defense would have been, you prematurely filed this, you had an option that this wasn't malpractice. So, my inquiry started on March 16th when the judge said, no. We've been to this court. Attorney Winstein was here. Nobody ever did anything to correct this mistake. Why didn't they review the orders if they were back here so many times? So, you know, you can't, I believe that the defense is trying to argue this both ways. If I would have filed this on February 22nd, they would have said, this case isn't right. It's premature. There's been no injury. There's no damages because you haven't received the proceeds of the house. It still could have been corrected. So, yes. February 22nd of what year? Of 2010. Now, I agree. Had I filed this, as you were correct, if I filed this case a month earlier, February 22nd of 2012, we wouldn't be here today. Right. We wouldn't be here today. But, you know, initially the defendants denied any malpractice. And now, the malpractice was so egregious and obvious that you should have known about it earlier. Thank you, Your Honor. I ask that you  and make a finding of the fact that the affirmative defense of statute of limitations should be stricken and find the fact that March 19th is the date the section approved. All right. Thank you. And, Mr. Park, thank you for your arguments here today. The matter will be taken under advisement. A written disposition will be issued. And if, perchance, you guys should settle this case before our disposition comes out, be sure and let us know, would you?